IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RYAN WILLIAM MILBECK,

                Plaintiff,

     v.

ALLISON GEORGE, ALEXANDER
SANCHEZ, MARGARET M. DREES,
KENOSHA COUNTY, MATTHEW P.
LOVELESS, ANDREW M. SCHROEDER,
JEREMY P. HUNT, VILLAGE OF
ROTHSCHILD, NEIL W. PAULSEN, and
JAMES J. CAMPBELL,

                Defendants.

OPINION and ORDER

23-cv-525-wmc

Representing himself, plaintiff Ryan William Milbeck has filed an amended complaint against the defendants under 42 U.S.C. §§ 1983, 1985, and 1986, alleging that he was arrested by officers employed by the Village of Rothschild, Wisconsin, and prosecuted by Kenosha County, for felony stalking in violation of his Fourth Amendment rights. (Dkt. #10.) The Village of Rothschild, Jeremy P. Hunt, who serves as Chief of the Rothschild Police Department ("RPD"), and two RPD officers, Matthew P. Loveless and Andrew M. Schroeder (the "Rothschild defendants"), have since filed a motion to dismiss the amended complaint against them under Federal Rule of Civil Procedure 12(b)(6). (Dkt. #25.) Similarly, the remaining defendants Kenosha County, Allison George, Alexander Sanchez, Neil W. Paulsen, and James J. Campbell (the "Kenosha defendants") move to dismiss all the claims asserted against them under Rule 12(b)(6). (Dkt. #34.) For reasons explained below, both motions will be granted and this case will be dismissed.

ALLEGATIONS OF FACT[1]

On July 30th, 2020, Deputy Allison George of the Kenosha County Sheriff's Department investigated allegations that plaintiff Ryan William Milbeck ("Ryan") had violated a state court restraining order obtained by his soon to be ex-wife, Kendra Milbeck ("Kendra"). According to the police report, Kendra complained that Ryan had hacked into her email, Facebook, and bank accounts. Kendra told Deputy George that Ryan had also made death threats, telling her that if she ever took their son and left him, he would kill her, and if she ever filed for divorce, "[she] wouldn't leave alive." (Dkt. #10-4, at 8.) Based on activity on her Facebook account, Kendra also told Deputy George that Ryan appeared to be trying to locate her, causing Kendra to fear for her safety. In addition, Kendra produced screenshots and other documentation depicting what appeared to be log-in attempts from a device located at Ryan's home address.

Deputy George checked Wisconsin court records to confirm that Ryan had originally been served with a temporary restraining order for domestic abuse valid until July 31, 2020, which was converted into a formal restraining order and injunction barring plaintiff from contacting or harassing Kendra.[2] An RPD officer then contacted Ryan about

---

[1] Unless otherwise indicated, the facts in this section are taken from plaintiff's amended complaint and the attached exhibits, which include police reports, a criminal complaint, and other documents that plaintiff refers to in connection with his claims. (Dkt. #10.) Under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). In particular, police reports are among the type of written instruments that may be incorporated by reference as part of the pleadings under Rule 10(c). *Marcure v. Lynn*, 844 F. App'x 926, 927 (7th Cir. 2021).

[2] Public records show that the restraining order and injunction were entered against plaintiff in Marathon County Case No. 2020CV367. *See Petitioner v. Milbeck*, No. 2021AP2115, 2022

the reported restraining order violation involving Kendra's Facebook account.  During that encounter, Ryan admitted that he was logged into Kendra's Facebook account on his home computer since she had previously logged in when she had lived at his residence.

When Deputy George asked Kendra about this, she admitted using Ryan's laptop in the past, but insisted she had always logged out of her accounts after using the computer, a habit she had developed from working with sensitive information.  Deputy George also noted that Ryan had been reading some of Kendra's work emails, making numerous attempts to enter Kendra's Facebook account, and searching for her friends' activities.  To Deputy George, Ryan's actions indicated an intent to track Kendra's activities and location.  In combination with Kendra expressing fears for her safety, Deputy George next pursued the issuance of a "temporary felony warrant" to arrest Ryan for stalking under Wis. Stat. § 940.21(2), as well as additional charges for three misdemeanor offenses based on his violating the existing restraining order under Wis. Stat. § 813.125(3).  (Dkt. #10-4, at 11.)  Sergeant Alexander Sanchez and Detective Neil Paulson of the Kenosha County Sheriff's Office both reviewed George's police reports, and Sergeant James Campbell ultimately approved the issuance of a temporary felony warrant to arrest Ryan for felony stalking.

On August 5, 2020, RPD Officers Matthew Loveless and Andrew Schroeder arrested plaintiff at his home in the Village of Rothschild on the felony warrant and the Kenosha

WI App 57, 983 N.W.2d 225 (affirming the domestic abuse injunction entered against plaintiff).  A court may take judicial notice of public court documents when considering a Rule 12(b)(6) motion.  *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

County District Attorney's Office concluded that the charges were supported by probable cause. Accordingly, on August 7, 2020, Assistant District Attorney Margaret M. Drees filed a formal criminal complaint against plaintiff in Kenosha County Circuit Court Case No. 2020CF000894, although that case was later dismissed on the prosecutor's motion at a preliminary hearing on September 16, 2020. During the almost six weeks between his arrest and the dismissal of the criminal complaint, plaintiff remained in custody at the Marathon County Jail and the Kenosha County Jail.

OPINION

In his amended complaint, plaintiff now characterizes the temporary felony warrant that authorized his arrest as a "temporary felony *want*," lacking sufficient evidence support a finding of probably cause. (Dkt. #10, at 3.) He points to a Wisconsin Department of Justice training manual describing a temporary felony "want" as a category of warrant that is based on "knowledge by police that a felony was committed," which can be entered in law enforcement databases such as NCIC while a felony warrant is actively being sought. (*Id*.; Dkt. #10-3, at 3.) As such, plaintiff argues that a felony *want* is *not* a warrant, meaning that Officers Loveless and Schroeder arrested him unlawfully, without a valid warrant based on probable cause, and that he was subjected to false arrest, false imprisonment, and malicious prosecution as a result. Plaintiff further alleges that all the other individual defendants with supervisory responsibility are liable for failing to intervene or prevent the violation of his rights and that both the Village of Rothschild and Kenosha County are liable for failing to adequately train their officers.

4

With little in the way of supporting facts, plaintiff lists the following claims in his amended complaint:

- Count 1: Defective Warrant - § 1983 (against defendants George, Sanchez, Kenosha County, and Paulsen).
- Count 2: Unlawful Entry - § 1983 (against defendants Loveless and Schroeder).
- Count 3: False Arrest - § 1983 (against defendants Loveless and Schroeder).
- Count 4: False Imprisonment - § 1983 (against all defendants).
- Count 5: Malicious Prosecution - § 1983 (against all defendants).
- Counts 6 & 7: Supervisory Liability - § 1983 (against defendants Sanchez, Paulsen, and Hunt).
- Count 8: Neglect to Prevent - §§ 1985/1986 (against defendants Drees, Sanchez, Paulsen, Campbell, Loveless, Schroeder, and Hunt).
- Count 9: Municipal Liability - § 1983 (against defendant Kenosha County and the Village of Rothschild).

If he were to prevail, plaintiff also seeks compensatory and punitive damages, as well as declaratory relief.

As already noted, the Rothschild and Kenosha defendants move to dismiss all of plaintiff's claims under Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, at this stage a court must accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor, although the court is not bound to accept legal conclusions as true. *Burger v. Cty. of Macon*, 942 F.3d 372, 374 (7th Cir. 2019). Further, a plaintiff must offer more than just "labels or conclusions or a

'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, while courts are to construe *pro se* complaints liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), a plaintiff must still provide sufficient facts in support of a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Plausibility is defeated when a plaintiff pleads himself out of court "by alleging facts that show there is no viable claim." *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008).

## I.   **Duplicative Claims**

The Kenosha defendants argue that Counts 1, 2, and 4 are duplicative of Count 3, because these claims stem from the same operative facts and allege the same injury. (Dkt. #35, at 9-10.) Specifically, they argue that each of these counts concern the same factual and injury allegations arising out of plaintiff's alleged unlawful arrest and confinement in violation of the Fourth Amendment. Counts 1 and 4 assert that plaintiff was "falsely arrested and imprisoned" without probable cause based on a "defective" temporary felony "want." (Dkt. #10, at 7, 9.) In Count 2, plaintiff similarly alleges that defendants Loveless and Schroeder entered his home without a valid warrant based on probable cause and that he was "falsely arrested and imprisoned" as a result. (*Id.* at 8.) In Count 3, plaintiff repeats his claim that he was "falsely arrested and imprisoned" without a valid warrant or probable cause in violation of the Fourth Amendment. (*Id.*)

The Seventh Circuit has directed that duplicative claims should be dismissed. *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737,

744 (7th Cir. 2004).  As defendants point out, claims are duplicative if they are based upon the same operative facts and allege the same injury.  *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014).  Because plaintiff's allegations of false arrest and imprisonment in Counts 1, 2, and 4 are in fact subsumed by the claims asserted in Count 3, those counts will be dismissed as duplicative and the court will treat these allegations as one consolidated claim for false arrest and imprisonment in violation of the Fourth Amendment.  *Id.*; *Maloney v. Pehlke*, No. 02C50318, 2004 WL 432243, at *2 (N.D. Ill. 2004) (dismissing a claim of false imprisonment under the Fourth Amendment as duplicative of the plaintiff's false arrest claim).

## II.   Remaining Claims

### A. False Arrest

Next, both the Rothschild and Kenosha defendants argue further that plaintiff's claim of false arrest fails as a matter of law because, based on the exhibits attached to the amended complaint, a valid temporary felony warrant was issued for plaintiff's arrest and there was more than sufficient probable cause.  (Dkt. #25, at 4-6; Dkt. #35, at 10-17.) To state a Fourth Amendment claim for false arrest under 42 U.S.C. § 1983, a plaintiff must plead facts indicating that his arrest was made without probable cause.  *Jones v. Webb*, 45 F.3d 178, 181 (7th Cir. 1995).  Thus, a finding of "[p]robable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." *Muhammad v. Pearson*, 900 F.3d 898, 907 (7th Cir. 2018) (citations omitted).

"Probable cause exists to arrest a suspect if at the time of arrest the facts and circumstances within the arresting officer's knowledge and of which he has reasonably

trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) (citation omitted).  Although probable cause requires more than a bare suspicion of criminal activity, it does not require proof beyond a reasonable doubt or even evidence sufficient to support a conviction.  *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000).

In this instance, plaintiff has a high hurdle to overcome to pursue a claim of false arrest against Deputy George, who made her decision to obtain an arrest warrant in part based on a sworn statement from the victim, Kendra Milbeck, including that plaintiff was in violation of the state court's existing restraining order and was stalking her.  *See Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003) ("The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigation.") (collecting cases).  In deciding "to arrest someone for criminal conduct that [the officer] did not witness," the Seventh Circuit has held that a police officer may rely on information provided to him or her "by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth." *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998).  An officer need not even believe that a witness is reliable to determine that her statement supports probable cause for an arrest, because the assessment of credibility rests with courts, not officers.  *Garcia v. Posewitz*, 79 F.4th 874, 880 (7th Cir. 2023).  "So long as a reasonably credible witness or victim informs

the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest." *Jenkins*, 147 F.3d at 585.

Here, the amended complaint and exhibits, which are summarized above, establish that Kendra called the police to report that she had a restraining order against plaintiff for domestic abuse, prohibiting him from contacting or harassing her.  Further, Kendra represented to Deputy George that she was in fear for her safety, among other reasons, because it appeared that plaintiff was trying to locate her by hacking into her email and Facebook accounts.  Kendra also told Deputy George that she recognized one of the devices used to hack into these accounts as a device belonging to plaintiff.  On August 3, 2020, plaintiff also admitted to RPD officers that he was logged into  Kendra's Facebook account on his home computer.  (Dkt. #10-4, at 10.)  Based on all of this information, Deputy George had more than a legally sufficient basis to request a temporary felony warrant for plaintiff's arrest on charges of felony stalking in violation of Wis. Stat. § 940.32(2).[3]

While plaintiff also contends that there was no warrant, but only a temporary felony "*want*," and therefore, no probable cause to arrest, any distinction between a warrant or a "want" is without a material difference for purposes of determining whether a lawful arrest has occurred.  Instead, according to the Wisconsin Supreme Court, a temporary felony

---

[3] Under Wis Stat. § 940.32(2), a person is prohibited from intentionally engaging in a course of conduct directed at a specific person that:  causes the person to suffer serious emotional distress or to fear bodily injury or death to herself (or a member of her household); would cause a reasonable person to suffer serious emotional distress or to fear bodily or death to herself (or a member of her household); and the person knows or should know that the conduct will cause the person to suffer serious emotional distress or to fear bodily injury or death to herself (or a member of her household).  Wis. JI-Criminal 1284 (stalking).

want "means 'that the suspect was alleged to have committed a felony and should be apprehended promptly, and that there was information sufficient to support an arrest warrant, but that no arrest warrant had yet been issued.'" *State v. Subdiaz-Osorio,* 2014 WI 87, ¶ 21 n. 8, 357 Wis. 2d 41, 849 N.W.2d 748 (quoting *State v. Collins*, 122 Wis.2d 320, 322 n. 1, 363 N.W.2d 229 (Ct. App. 1984)).  More specifically, the court confirmed that the process of obtaining a temporary felony want, like a warrant, necessarily requires police to have probable cause:

> To enter information into [a state or national data base system authorizing an arrest], the police had to demonstrate probable cause.  The Kenosha police had probable cause to believe [defendant] committed the homicide based on their investigation, and they entered [his] information into the systems.  Together, [these systems] notified all law enforcement agencies in the country about the temporary want for [defendant].

*Subdiaz-Osorio*, 2014 WI 87, ¶ 21 (footnotes omitted).  In other words, as other courts have recognized, a temporary felony want is simply an "inter-department warrant where probable cause exists to arrest a subject on an active investigation for a period of 72 hours." *Brown v. Johnson*, No. 17-cv-462, 2019 WL 4261161, at *1 (E.D. Wis. Sept. 9, 2019); *see also State v. Burrows*, 2019 WI App 5, ¶ 20, 385 Wis. 2d 515, 925 N.W.2d 789 (holding that that a temporary felony want "is merely a tool used by officers to help apprehend a suspect that an officer has probable cause to believe committed a crime").

Regardless, records attached to the complaint confirm that on August 5, 2020, a temporary felony *warrant* was entered into NCIC for plaintiff's arrest on charges of felony stalking.  (Dkt. #10-1, at 2.)  This alone is sufficient to support plaintiff's arrest.  *See Mannery v. City of Milwaukee,* No. 22-cv-547, 2022 WL 2238939, at *3 (E.D. Wis. June 22, 2022) (an incident report attached to the complaint showed plaintiff was the subject of a

10

temporary felony warrant and, therefore, officers had probable cause to arrest him, meaning plaintiff's complaint for unlawful arrest under the Fourth Amendment was not viable on its face).

Plaintiff argues further that probable cause was lacking because the felony stalking charges were later dismissed, but that is proof of nothing. Indeed, court records attached to the complaint show the charges were dismissed on the prosecutor's motion but are silent as to the reason. (Dkt. #10-2, at 2.) Because probable cause is determined *at the time of the arrest*, the mere fact that charges are later dismissed or pursued or that a defendant is acquitted or found guilty of the offense is "irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *Humphrey v. Staszak*, 148 F.3d 719, 728 (7th Cir. 1998) ("The fact that the charges against Humphrey were later voluntarily dismissed does not mean there was no probable cause for his arrest.").

Moreover, plaintiff's own allegation of facts in the amended complaint and its attachments show that the temporary felony warrant issued in this case was not defective. In particular, the police reports attached to that complaint, which are supported by Kendra's sworn statement to police, demonstrate that there was ample probable cause to arrest plaintiff for the offense of felony stalking. *Anderer v. Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004); *Jenkins*, 147 F.3d at 585. Whether or not the charges were later dropped, the existence of probable cause at the time of his arrest is fatal to plaintiff's Fourth Amendment claim. Therefore, the allegations in plaintiff's own amended complaint preclude his going forward with a false arrest claim.

## B. Malicious Prosecution

In Count 5, plaintiff also claims that he was subjected to malicious prosecution in violation of the Fourth Amendment following his arrest. "To succeed on such a claim, a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U.S. 36, 43, and n. 2 (2022)). Plaintiff cannot show that he was arrested without probable cause for the same reasons discussed above, nor do the facts alleged establish that probable cause was somehow later known by one of the defendants to be false. Since probable cause is a complete defense to a claim of malicious prosecution under both state and federal law, *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015); *Strid v. Converse*, 111 Wis. 2d 418, 331 N.W.2d 350, 354 (1983), the claim asserted in Count 5 must also be dismissed.

## C. Supervisory Liability

In Count 6, plaintiff claims that Kenosha County Sergeant Sanchez and Detective Paulsen are liable in their capacity as supervisory officials for approving the temporary felony warrant sought by Deputy George. (Dkt. #10, at 9-10). In Count 7, plaintiff similarly alleges that Rothschild Police Chief Hunt is liable in his capacity as a supervisor for allowing two of his officers, defendants Loveless and Schroeder, to arrest him based on a temporary felony warrant lacking probable cause. (*Id.*).

Under 42 U.S.C. § 1983, a supervisor is liable for a subordinate's misconduct that results in a constitutional violation only if the supervisor was *personally* involved. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021); *see also Gill v. City of Milwaukee*, 850 F.3d 335,

344 (7th Cir. 2017).  In his amended complaint, plaintiff does not really allege what personal role defendants Sanchez, Paulsen, and Hunt played in the issuance of the warrant or decision to arrest by defendants George, Loveless, and Schroeder.  Even if he had, however, plaintiff's own pleading shows his arrest *was* based on probable cause. Accordingly, the claims asserted in Counts 6 and 7 must be dismissed as well.

### D. Failure to Intervene or Prevent

Similar to the claims raised in Counts 6 and 7, plaintiff alleges in Count 8 that Kenosha County Detective Sanchez, and Sergeants Paulson and Campbell, were supervisors who failed to intervene or prevent his unconstitutional arrest.  (Dkt. #10, at 10.)  Plaintiff also alleges that RPD Officers Loveless and Schroeder, as well as their Chief Hunt, are liable for the same reason.  (*Id.*)  Pointing to his arrest pursuant to the temporary felony warrant obtained by Kenosha Deputy George, plaintiff alleges that each of these supervisory defendants violated his civil rights under 42 U.S.C. §§ 1985 and 1986.  (*Id.*)

As an initial matter, plaintiff does not allege facts showing that either 42 U.S.C. § 1985 or § 1986 applies.  Section 1986 provides a remedy against those who fail to intervene to prevent a violation of § 1985, which in relevant part authorizes an action for the recovery of damages incurred when "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" 42 U.S.C. § 1985(3).  To state a claim under § 1985(3), however, a plaintiff must allege the following: "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy,

and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1024 (7th Cir. 2000)(citation omitted).  In addition, the complaint must contain details about the conspiracy:  "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [i]s not enough." *Cooney v. Rossiter*, 583 F.3d 967, 970-71 (7th Cir. 2009).  Moreover, there must be "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirator's actions." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002).

Plaintiff does not allege any facts showing that a conspiracy existed, much less a conspiracy to deprive him of his equal rights motivated by invidious race or other protected class-based discriminatory animus.  Plaintiff's conclusory allegations in his amended complaint are insufficient to state a claim under § 1985(3).  *See Jafree v. Barber,* 689 F.2d 640, 644 (7th Cir.1982) (allegations of a conspiracy "must be supported by material facts, not conclusory statements"); *Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) ("[A] conspiracy requires factual allegations showing a meeting of minds. The conclusory allegations herein are insufficient.").  Finally, since plaintiff's amended complaint and attachments show these defendants acted consistent with the law requiring probable cause to arrest and prosecute, or were not personally involved at all, they cannot otherwise be sued for those actions.  Accordingly, the claim alleged in Count 8 must be dismissed.

## E.  Municipal Liability

In Count 9, plaintiff next alleges that defendant Kenosha County is somehow liable as a municipality for failing to train its officers with the Kenosha County Sheriff's

Department that a temporary felony "want" is not the same as a warrant.  (Dkt. #10, at 11.)  Plaintiff raises similar allegations against defendant Village of Rothschild.  (*Id*.)

Municipalities may be sued under 42 U.S.C. § 1983, but they are not vicariously liable for the constitutional torts of their employees or agents.  *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691-94 (1978).  Rather, "a plaintiff can prevail on a *Monell* claim for municipal liability only when challenging the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022) (quoting *Monell*, 436 U.S. at 694).  To state a *Monell* claim, the plaintiff must demonstrate that the municipality itself acted with "deliberate indifference" to his constitutional rights and that the municipality's action was the "moving force" behind the violation of his federal rights.  *Id*. (citations omitted).  A failure to train can satisfy the rigorous causation standard for municipal liability only if "a known or obvious consequence" of a failure to provide a particular type of training is that a constitutional violation will occur.  *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011).

Plaintiff has not alleged facts showing that, by placing him under arrest pursuant to the temporary felony warrant lawfully obtained by defendant George, any officer employed by Kenosha County or the Village of Rothschild acted in such a way that violated plaintiff's constitutional rights.  Where a complaint has failed to demonstrate a constitutional violation by one of its actors, there is no basis to proceed against the municipality by itself for a failure to train under *Monell*.  *Windle v. City of Marion,* 321 F.3d 658, 663 (7th Cir. 2003); *see also Novoselsky v. Brown*, 822 F.3d 343, 357 (7th Cir. 2016) ("To have a viable

*Monell* claim for damages, a plaintiff must show a violation of his constitutional rights by an individual defendant.") (citing *Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015)).   Having failed to allege a constitutional violation by any of the individual defendants, plaintiff has failed to state a claim against either defendants Village of Rothschild or Kenosha County.   Absent a viable claim against the Rothschild and the Kenosha defendants, the motions to dismiss will be granted in their entirety.

### F.  Claims Against Defendant Margaret Drees

This leaves one remaining defendant, who has not filed an answer and appears not to have been served.   Plaintiff alleges that defendant Margaret Drees is liable for malicious prosecution as alleged in Count 5 because, as an assistant district attorney for Kenosha County, she filed criminal charges against him, which were later dropped.   (Dkt. #10, at 9.)   He also appears to claim that, by approving the criminal charges against him, she failed to intervene and prevent the violation of his rights as alleged in Count 8.   (*Id*. at 10.)

Although Drees has not appeared in this case, the claims against her must also be dismissed because plaintiff's allegations pertain to actions taken in connection with his prosecution.   A prosecutor enjoys absolute immunity from civil suits under § 1983 for damages "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachman*, 424 U.S. 409, 431 (1976).   This immunity shields a prosecutor "even if [s]he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of a false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986); *see also Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017) ("Prosecutors are absolutely immune for actions they undertake in their capacities as prosecutors, even

including malicious prosecution unsupported by probable cause").  Because plaintiff does not allege *any* facts that would deprive Drees of absolute prosecutorial immunity, the claims against her will also be dismissed under 28 U.S.C. § 1915(e)(2)(B).

## III.    Leave to Amend

The Seventh Circuit has cautioned against dismissing a pro se plaintiff's case without giving the plaintiff a chance to amend the complaint. *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016).  Here, however, plaintiff has already had one opportunity to amend.  Although plaintiff requests leave to amend if any of his counts are dismissed, he has neither provided a proposed amended complaint nor alleged additional facts in support of his claims.  (Dkt. #37, at 3.)  In light of the exhibits attached to plaintiff's current amended complaint (dkt. #10), plaintiff is unlikely to be able to demonstrate that he has a viable federal claim against any of the defendants for all the reasons discussed above.  Since leave to amend need not be granted "if it is clear that any amendment would be futile," *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013), the court will dismiss this action without leave to amend.  *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009).

ORDER

IT IS ORDERED that:

1.  The motions to dismiss filed by the Rothschild and Kenosha Defendants (dkts. #24 and #34) are GRANTED, and this case is DISMISSED with prejudice.

17

2. The claims against defendant Margaret Drees, who has not been served and has not appeared in the case, are also DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) because she is entitled to immunity from suit.

3. The clerk of court is directed to close this case and enter judgment in favor of defendants.

Entered this 13th of November, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge